RECEIVED
2021 SEP 20 P 1:40
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| **DR. LAUREN RICCIARDELLI,** | ) |
| **Plaintiff,** | ) CASE NO. 2:21-cv-625-ECM-KFP |
| v. | ) |
| | ) **JURY TRIAL REQUESTED** |
| **TROY UNIVERSITY,** | ) |
| **Defendant.** | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, Dr. Lauren Ricciardelli, pro se, and hereby doth complain against the above-named Defendant, as set forth herein-below.

### I. JURISDICTION & VENUE

1.    Dr. Ricciardelli files this Complaint, institutes these proceedings, and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §§ 1331 and 1334 (a)(4), as an action arising under the Act of Congress known as Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act, 42 U.S.C. § 1981(a); and 42 U.S.C. § 1201, et seq., to obtain equitable relief, the costs of suit, including all fees, and damages suffered by the Plaintiff, due to the Defendant's discrimination against Plaintiff.

2.    Dr. Ricciardelli filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in Birmingham, Alabama on March 19, 2021, against Troy University alleging gender discrimination, national origin discrimination, and retaliation. Plaintiff received a right-to-sue on June 24, 2021, giving

1

Plaintiff the right to pursue this claim in federal court for 90 days after said receipt. (Exhibit A).

3. Venue is proper in the Northern Division of the Middle District of Alabama, since the alleged discriminating action of Defendant occurred in Pike County, Alabama.

## II. PARTIES

4. The named Plaintiff, Dr. Lauren Ricciardelli (hereinafter "Plaintiff" or "Dr. Ricciardelli"), is a citizen of the United States and a resident of the State of Florida. Plaintiff is over the age of nineteen years.

5. The Defendant, Troy University (hereinafter "Defendant" or "Troy"), is a state-funded public university. At all times relevant to this complaint, Plaintiff was employed by Defendant.

## III. STATEMENT OF FACTS

6. Dr. Ricciardelli has an undergraduate degree in philosophy, a Master of Social Work (MSW), and PhD in Social Work from the University of Georgia.

7. In January 2018, Dr. Ricciardelli was hired by Troy University as an Assistant Professor in Troy's College of Health and Human Services' School of Social Work and Human Services.

8. Dr. Denise Green was Dean of Troy's College of Health and Human Services from Dr. Ricciardelli's time of hire in January 2018 until May 2021. In November 2020, Dr. Green notified College faculty via electronic communication that she would be stepping down as Dean due to fulfilling five years of service. After stepping down, Dr. Green remains employed at Troy as a fulltime, tenured professor of Social Work. Dr. Green is one of two tenured professors in the Social Work department.

9. Dr. Green, while Dean, speculated to the former Chair, Renita Davis, about Dr. Ricciardelli's sexual orientation and proclivities. This happened more than once. Dr. Green purportedly told Professor Renita Davis that she had identified Dr. Ricciardelli as a "member of the family". "Member of the family" is a common expression referring to members of the LGBTQ community, and arguably a reference to the Italian mafia.

10. Dr. Ricciardelli was informed that Dr. Green believed she was a "member of the family" as a result of Dr. Green determining that Dr. Ricciardelli did not demonstrate adequate sexual attraction toward Dr. Ricciardelli's colleague from the University of Georgia, Dr. Larry Nackerud, who has since retired. Further, Dr. Green speculated if Dr. Ricciardelli was romantically involved with Dr. Ricciardelli's colleague from the University of Tennessee, Dr. Stephen McGarity, who Dr. Ricciardelli had encouraged to apply for employment with Troy at Dr. Green's direction.

11. In March 2020, Dr. Ricciardelli learned that Dr. Green contacted Dr. Larry Nackerud at the University of Georgia making false accusations of research misconduct regarding an article on which Dr. Nackerud was co-author with Dr. Ricciardelli. Dr. Ricciardelli was first author on the article. Dr. Green contacted Dr. Nackerud prior to discussing these defamatory and baseless allegations of research misconduct with Dr. Ricciardelli herself.

12. As would later be discovered in Troy University's May 2021 response to Dr. Ricciardelli's EEOC complaint, Troy upheld the portion of Dr. Ricciardelli's formal harassment complaint filed with Troy Human Resources on September 10, 2020 stating that Dr. Green's contact with Dr. Nackerud was professionally inappropriate and

damaging. In fact, as was later determined, this was the only portion of Dr. Ricciardelli's formal harassment complaint against Dr. Green that Troy University upheld.

13. Despite Troy University upholding the portion of Dr. Ricciardelli's harassment claim against Dr. Green related to research misconduct allegations, nearly a year later in April 2021, the same research misconduct accusations about the same peer-review article were made against Dr. Ricciardelli to the international publishing company, Taylor & Francis, while Dr. Denise Green retained her authority as Dean at Troy. Dr. Green retained her position as Dean until May 2021, despite Troy partially upholding Dr. Ricciardelli's complaint of harassment against Dr. Green in December 2020—and despite Dr. Green's ongoing record of harassment of social work faculty that predates the harassment of Dr. Ricciardelli. Internal and external records support a pattern of harassing behavior demonstrated by Dr. Green, of which Troy University was aware.

14. When Dr. Ricciardelli informed Dr. Jay Garner and Human Resources on May 3, 2021 that Dr. Green had repeated the false allegations of research misconduct that she had made to Dr. Nackerud, but this time to the international publishing company, Taylor & Francis, Dr. Garner informed Dr. Ricciardelli that Troy cannot regulate employees' free speech. This response was not consistent with Troy's earlier finding that Dr. Green contacting Dr. Nackerud in similar fashion constituted harassment. Defamation, libel, and slander do not constitute protected speech.

15. Around and after March 2020, Dr. Green began harassing Dr. Ricciardelli in a systematic and targeted fashion. In addition to Dr. Green contacting Dr. Nackerud with false allegations of research misconduct, it was also during this time that Dr. Ricciardelli was targeted to present her research at a Troy University conference for which Dr.

4

Green was keynote speaker. Dr. Ricciardelli was given approximately one week's notice at the onset of Covid-19 to prepare. That timeframe is not aligned with norms and standards in professional practice. Nonetheless, Dr. Ricciardelli presented findings from her national research study using a theoretical and ethical framework that is purportedly counter to Dr. Green's espoused values and beliefs. Dr. Ricciardelli's research study was accepted for publication in July 2020 and published as an article in the international journal, *Social Work Education*, in August 2020, evidence of the study's scholarly contribution to the field of social work and alignment with the profession's standards, ethics, and values.

16. Further, it was also during March 2020 that Dr. Ricciardelli became targeted for her role in a former MSW student's successful completion of field practicum and the two-year graduate program. The MSW student was diagnosed with Traumatic Brain Injury prior to admission to the MSW program. Counter to standard practice, and arguably a conflict of interest, Dr. Green paid the MSW student's program admission. To Dr. Ricciardelli's knowledge, Dr. Green did not pay the admission fee for any other social work student.

17. After it was reported to Dr. Ricciardelli by the MSW student with Traumatic Brain Injury that the student had been called "retarded" [sic] by social work faculty in an impromptu meeting designed to remove the student from the two-year MSW program, Dr. Ricciardelli assisted the student to file an internal ADA grievance with the former disability resource coordinator, Jerri Carroll. At the time the grievance was initiated, Dr. Ricciardelli served as the student's academic advisor and had taught the MSW student in two courses.

18. In lieu of the MSW student with Traumatic Brain Injury formally submitting the ADA complaint with Troy University, Dr. Green instructed Dr. Ricciardelli to work with the student individually in order to assist the student complete field practicum. The student and the student's mother were informed that if they were to initiate a formal complaint, the student would not be allowed to enroll in courses.

19. While in Dr. Ricciardelli's Phenix City office and while standing over Dr. Ricciardelli, who was seated at her desk, Dr. Green stated to Dr. Ricciardelli an implicit directive: "If students fail once, they'll fail again." Dr. Green's directive stands in violation of program accreditation standards as set forth by the national accrediting body, the Council on Social Work Education (CSWE).

20. Dr. Ricciardelli and other social work faculty were witness to Dr. Green targeting the MSW student with Traumatic Brain Injury by name in a March 2020 faculty meeting, stating without merit or authority to all faculty that the student did not qualify for accommodations. The student was entitled to ADA accommodations as a result of Traumatic Brain Injury, and these accommodations were on file at Troy University. Overall, the student evidenced a successful academic record at Troy across two years.

21. Finally, it was in March 2020 that the national accrediting body, the Council on Social Work Education (CSWE), issued a letter to Troy stating that the BSW program accreditation status had been "restored." Neither faculty nor students were informed of the compromised standing of the program, which is in further violation of CSWE accreditation standards and in this way risks further professional harm. As of September 10, 2021, both the BSW and MSW programs remain under active investigation by the CSWE for non-compliance.

22. Dr. Green removed Dr. Ricciardelli from courses SWK 7797 and SWK 7798 without pay on Friday, June 5, 2020. Dr. Ricciardelli was removed for expressing Covid-19 related safety and liability concerns over MSW students completing practicum "volunteer" hours face-to-face in the community, especially when it had been previously stated that MSW students would not complete these hours face-to-face, but instead, virtually/ remotely. That students would complete "volunteer" hours virtually/ remotely was the original agreement that resulted in Dr. Ricciardelli's decision to teach field practicum (i.e., SWK 7797 and 7798) at the exclusion of other possible courses. Prior to her course removal without pay, Dr. Ricciardelli had expressed her financial need to work over Summer 2020.

23. The initial policy endorsing only the virtual/ remote completion of hours was reversed by Dr. Denise Green after the start of the Summer 2020 term and unbeknownst to Dr. Ricciardelli. In addition to the face-to-face "volunteer" option, MSW students were granted the option by Dr. Green to complete and count practicum hours that were accrued at their place of employment.

24. A former MSW student died while enrolled in SWK 7797 and SWK 7798 from Covid-19, though this statement was later retracted by Troy University in the press. The MSW student was scheduled to graduate from Troy University in July 2020, but died in June while purportedly working at a prominent social service agency that hosts and hires Troy social work students/ graduates.

25. It is unknown if the MSW student was also counting work hours toward "volunteer" hours, since such a policy was approved and implemented by Dr. Green. If the MSW student contracted Covid-19 at the agency at which she was employed, while

also counting these same hours toward field practicum completion (i.e., SWK 7797 and 7798), this suggests a degree of responsibility on the part of the Troy University MSW program.

26. Dr. Ricciardelli stated exactly this concern prior to her June course removal in an email dated May 12, 2020. At the end of May 2020, Dr. Ricciardelli received the written response that students would still be expected to complete "volunteer" hours virtually/ remotely. However, Dr. Ricciardelli was removed without pay on June 5, 2021 for enforcing that expectation in her SWK 7797 and SWK 7798 courses.

27. Social work students and faculty were left to grieve the MSW student's death alone and without support or acknowledgement by Troy administration. Neither Dr. Garner as Chair, Dr. Green as Dean, nor any representative from Troy University senior administration were present for the student's virtual eulogy at which Dr. Ricciardelli and others spoke. The MSW student's family members were also present. As the MSW student's former academic advisor, Dr. Ricciardelli had assisted the student to enroll in the student's preferred course sections of SWK 7797 and SWK 7798. Dr. Ricciardelli must live with this fact, as must the student's instructor of record for those courses. This has caused undue emotional and psychological harm.

28. After removing Dr. Ricciardelli from summer courses in June 2020, Dr. Green provided Dr. Ricciardelli with a falsified annual evaluation in an email that served as an introduction between Dr. Ricciardelli and the then newly appointed interim Chair of Social Work, Dr. Jay Garner. In June 2021, Dr. Garner replaced Dr. Green as the Dean of the College of Health and Human Services.

29. As a result of ongoing harassment and after attempting to address the various "misunderstandings" directly with Dr. Green, but to no avail, Dr. Ricciardelli submitted a formal grievance against Dr. Green with Troy University Human Resources on September 10, 2020. Prior to the formal grievance, Dr. Ricciardelli initiated an "informal" complaint with Troy Human Resources in June 2020. Prior to the informal complaint in June, on a May 2020 video call, Dr. Ricciardelli informally reported Dr. Green's troubling behavior toward her to former Phenix City Campus Vice Chancellor, Dr. David White.

30. The harassment intensified in September 2020 when Dr. Ricciardelli was placed under an alleged review by Dr. Green for a total of three weeks, with little to no information regarding the scope or duration of the review, the grounds for initiating the review, the grounds for conducting the review, or the leadership under which the review was conducted. Further, during this time Dr. Ricciardelli was restricted from completing job duties commensurate with her employment contract (i.e., research and service).

31. Dr. Green sabotaged Dr. Ricciardelli's research by falsely accusing her of research misconduct and exploiting students without support, and made these defamatory and baseless accusations to Dr. Ricciardelli's colleagues at Troy University and the University of Georgia, and to academic international publishing company, Taylor & Francis. Dr. Green's practice of leveling baseless and defamatory accusations about Dr. Ricciardelli resulted in harm to her professional reputation (e.g., internal and external colleagues; program and department directors; international publishing company, Taylor & Francis; the Troy University Graduate Academic Council; the Troy

University Institutional Review Board; and the College of Health and Human Services Third Year Review Committee).

32. On September 10, 2020, Dr. Ricciardelli filed a formal grievance against Dr. Green with Troy University on the grounds of harassment, falsification of faculty evaluations, reputational harm, wrongful removal from courses without pay, unfair course load distributions, and conflicts of interest.

33. In December 2020, Troy notified Dr. Ricciardelli that it had conducted an investigation into her grievance and that it found merit with a portion of the grievance, although it did not specify what portion of the claim it determined had merit. Troy further stated that appropriate sanctions were administered, though no further details were provided in writing. Dr. Ricciardelli was notified verbally that Dr. Green would not have direct contact with her and that she would receive a revised faculty evaluation, which would be considered for Dr. Ricciardelli's Third Year Review.

34. Despite the no-contact directive, in March 2021, Dr. Green contacted Dr. Ricciardelli directly with her Third Year Review, informing Dr. Ricciardelli that she did not meet expectations across any of the areas of service, teaching, or research. This assessment was counter to Dr. Ricciardelli's well above average records and annual faculty evaluation/s, once they were received. Additionally, Dr. Ricciardelli submitted her materials to Dr. Garner four months in advance in an effort to receive constructive feedback. Dr. Garner called Dr. Ricciardelli's Third Year Review materials "impressive" and made special mention of her research. Further, it was written in Dr. Ricciardelli's Third Year Review that she had falsified her curriculum vitae. The allegation of falsification was and remains unequivocally libelous, and does great professional harm.

35. During Dr. Ricciardelli's Third Year Review, she was purposefully and erroneously listed as School of Nursing faculty. The representative from the Social Work department, Dr. Jeff Waller, was not present to represent Dr. Ricciardelli. Despite his absence, the Third Year Review committee under the leadership of Dr. Green as committee Chair, counted Dr. Waller as being present, though he was not, and listed him as voting down Dr. Ricciardelli, though he did not. There appears to have been an active effort to exclude Dr. Waller, with the Third Year Review meeting being cancelled and rescheduled numerous times before being scheduled for the original day and time it had been cancelled initially.

36. It was expressed to Dr. Ricciardelli at different time points that it was either Dr. Shellye Vardaman or Dr. Denise Green who represented Dr. Ricciardelli in the Third Year Review process. It is therefore unclear as to who represented Dr. Ricciardelli and how they were qualified to do so. In the case of the former, Dr. Shellye Vardaman is faculty in the School of Nursing and not the School of Social Work and Human Services. In the case of the latter, Dr. Ricciardelli's claim of harassment against Dr. Green was partially upheld by Troy University and therefore should have precluded Dr. Green's role in Dr. Ricciardelli's Third Year Review process.

37. Dr. Ricciardelli did not receive her revised faculty evaluation, as promised by Troy Human Resources, until after her Third Year Review. Dr. Ricciardelli made multiple requests to then-Chair Dr. Jay Garner and Ashley English with Troy University Human Resources to receive and review her new faculty evaluation. Despite multiple requests, and counter to Troy University stated policy, Dr. Ricciardelli's revised evaluation was

submitted with her Third Year Review materials without her consultation, knowledge, or endorsement.

38. Dr. Ricciardelli was one of three tenure track faculty in social work for all of Troy University; she was the highest producing faculty member, making a significant impact to research contributions from the department during the time of her employment, while also engaging in numerous service projects and receiving exceedingly positive student reviews across all courses on a consistent basis. Despite strong academic merit, Dr. Ricciardelli was the lowest paid full-time, and tenure track, faculty member at the Troy University School of Social Work and Human Services.

39. Dr. Ricciardelli was actively excluded from receiving course overloads by Dr. Green, who at the same time, provided her own daughter, Samantha Ellis—who was the BSW program director appointed by Dr. Green—with disparate course overloads. To wit, while Dr. Ricciardelli was removed without pay from courses during Summer 2020, Professor Ellis received 11 course overloads in addition to serving as BSW program director. As a result of Dr. Ricciardelli's formal grievance against Dr. Green to Troy Human Resources, it was determined that overloads should be offered to Dr. Ricciardelli going forward.

40. Further, after Dr. Ricciardelli filed the grievance against Dr. Green, Dr. Green removed Dr. Ricciardelli from the curriculum committee, precluded and excluded Dr. Ricciardelli from functioning on the Graduate Academic Council, and continued intimidating Dr. Ricciardelli.  One example of intimidation was Dr. Green being scheduled to teach at the Troy University Phenix City site for Summer 2021, where Dr. Ricciardelli had been stationed since her time of hire in January 2018. Never before

during Dr. Ricciardelli's time at Troy had Dr. Green been scheduled to teach at the Phenix City site.

41. Dr. Ricciardelli expressed concern regarding Dr. Green being scheduled to teach face-to-face at Phenix City in a March 2, 2021 video meeting with Ashley English from Human Resources, Dr. Jay Garner, and the Associate Provost for Academic Support, Dr. Lee Vardaman. Incidentally, Dr. Lee Vardaman is also the husband of Dr. Shellye Vardaman, the School of Nursing faculty member who purportedly represented Dr. Ricciardelli in the Third Year Review process. Dr. Ricciardelli requested the meeting in order to address her increasing concerns and distress over ongoing harassment and retaliation.

42. In the March 2, 2021 meeting, Dr. Garner denied that Dr. Green was scheduled to teach in Phenix City during the Summer 2021 term. In response to Dr. Garner's misleading assertion, Dr. Ricciardelli indicated to Dr. Garner, Dr. Lee Vardaman, and Ashley English that she possessed a screenshot of the schedule showing that Dr. Green was indeed scheduled to teach face-to-face in Phenix City during Summer 2021. It was subsequently suggested by Dr. Garner that Dr. Ricciardelli would potentially be allowed to work remotely during Summer 2021, which is acknowledgement of the hostile environment created by Dr. Green.

43. In a March 29, 2021 phone call with Dr. Garner regarding the issue of Dr. Ricciardelli's Third Year Review, and Dr. Garner's role in that process as Chair of Social Work, Dr. Garner compared Dr. Green to a bully in the schoolyard, which Dr. Ricciardelli found to be an apt description. However, instead of condemning the bullying behavior, Dr. Garner transferred the responsibility to Dr. Ricciardelli, stating that Dr. Ricciardelli

should in essence stop provoking such behavior and do better at hiding the damaging impacts of harassment. Dr. Ricciardelli reminded Dr. Garner that it is the people who harass others who are in violation of policies, and that these policies are meant to protect people like herself from workplace harassment.

44. As a result of the continued harassment, discrimination, and retaliation by Dr. Green, Dr. Ricciardelli suffered undue psychological distress that occupied a great percentage of her work time and adversely affected her mental and emotional health.

45. Therefore, as a result of the ongoing harassment, discrimination, and retaliation, Dr. Ricciardelli felt forced to resign from her position at Troy University on May 3, 2021, and considers her resignation to be a constructive discharge. The false allegation of research misconduct made to international publishing company, Taylor & Francis, in April 2021 was the final and precipitating factor for Dr. Ricciardelli's resignation.

46. Based on the foregoing, Dr. Ricciardelli avers that she was subjected to illegal discrimination, on the basis of gender and national origin, and illegal retaliation, in violation of Title VII, 42 U.S.C. § 2000(e). As a result of the discrimination and retaliation practiced against her, Dr. Ricciardelli has lost income and suffered severe mental and emotional distress. Dr. Green's actions have also damaged Dr. Ricciardelli's professional reputation. Further, Dr. Ricciardelli has incurred costs and fees to pursue this matter.

## IV. PLAINTIFF'S CAUSES OF ACTION

## COUNT ONE - GENDER DISCRIMINATION

47. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 46 above, the same as if more fully set forth herein, and further avers that the Defendant's actions toward her violated her right to be free of gender discrimination in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000(e), et seq.), and the 1991 Civil Rights Act, and 42 U.S.C. 1981(a).

48. As a proximate cause of Defendant's afore-described actions in discriminating against Plaintiff, due to her gender, Plaintiff was injured and damaged, as set forth in paragraphs 1 through 46 above. In addition, Plaintiff has suffered considerable mental and emotional anguish.

49. Plaintiff avers that she has pursued and exhausted her administrative remedies.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Court grant the following relief:

a) Judgment declaring that the Defendant discriminated against Plaintiff, on the basis of Plaintiff's gender;

b) An order granting Plaintiff compensation for rights to which Plaintiff would have been entitled, had Plaintiff not been the victim of gender discrimination, effective from the date of final judgment;

c) An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

    d)    An award of all court costs and fees, including those incurred for seeking administrative relief; and

    e)    Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT TWO - NATIONAL ORIGIN DISCRIMINATION

50. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 46 above, the same as if more fully set forth herein, and further avers that the Defendant's actions toward her violated her right to be free of national origin discrimination in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000(e), et seq.), and the 1991 Civil Rights Act, and 42 U.S.C. 1981(a).

51. As a proximate cause of Defendant's afore-described actions in discriminating against Plaintiff on the basis of national origin, Plaintiff was injured and damaged, as set forth in paragraphs 1 through 46 above. In addition, Plaintiff has suffered considerable mental and emotional anguish.

52. Plaintiff avers that she has pursued and exhausted her administrative remedies.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Court grant the following relief:

    a)    Judgment declaring that the Defendant discriminated against Plaintiff, on the basis of Plaintiff's national origin;

16

b) An order granting Plaintiff compensation for rights to which Plaintiff would have been entitled, had Plaintiff not been the victim of national origin discrimination, effective from the date of final judgment;

c) An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

d) An award of all court costs and fees, including those incurred for seeking administrative relief; and

e) Such further, other and different relief as the Court may deem appropriate and necessary.

## COUNT THREE - RETALIATON

53. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 46 above, the same as if more fully set forth herein, and further avers that the Defendant's actions toward her, including the unlawful retaliation against her, violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, (42 U.S.C. '2000e, et seq.), as amended by the 1991 Civil Rights Act.

54. As a proximate cause of Defendant's afore-described actions of unlawful retaliation against Plaintiff, the Plaintiff was injured and damaged, as set forth in paragraphs 1 through 46 above. In addition, Plaintiff has suffered considerable mental and emotional anguish.

55. Plaintiff avers that she has pursued and exhausted her administrative remedies.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Court grant the following relief:

a)  A declaratory judgment declaring that the Defendant has unlawfully retaliated against the Plaintiff;

b)  An award of compensatory damages, including for mental anguish, to which the Plaintiff may be entitled;

c)  An award of all court costs and fees, including those incurred for seeking administrative relief;

d)  Such further, other and different relief as the Court may deem appropriate and necessary.

## V. JURY DEMAND

Plaintiff hereby requests trial by jury on all issues so triable.

Respectfully submitted this _18_ day of September 2021.

Dr. Lauren Ricciardelli, Plaintiff

_/s/ Lauren Ricciardelli_
Dr. Lauren Ricciardelli, pro se

P.O. Box 3668
Pensacola, FL 32516
Telephone: 706-351-2555
Email: lrdelli@gmail.com